IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM HOWE | CIVIL ACTION |
| Plaintiff, | NO. 10-5495 |
| v. | |
| LC PHILLY, LLC and<br>KEVIN HOLOHAN | |
| Defendants. | |

**OPINION**

Slomsky, J.                                                                                                April 15, 2011

**I.      INTRODUCTION**

On October 18, 2010, Plaintiff William Howe filed a Complaint against Defendants, alleging that both Defendants engaged in the following acts: (1) breach of contract; (2) violation of Pennsylvania Wage Payment and Collection Law; (3) fraudulent misrepresentation; (4) negligent misrepresentation; and (5) punitive damages, all arising from an employment dispute. (Doc. No. 1.) On December 30, 2010, Defendants LC Philly, LLC ("LC Philly") and Kevin Holohan ("Holohan") (together "Defendants") filed a Motion to Dismiss Plaintiff's Complaint seeking dismissal of the breach of contract claim against Defendant Holohan and dismissal of the fraudulent misrepresentation, negligent misrepresentation, and punitive damages claims in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. No. 2.) On February 16, 2011, the Court heard oral argument on the Motion, and the matter has been fully briefed by the parties (see Doc. Nos. 1, 2, 6, 8).

---

[1] Defendants have not moved to dismiss the breach of contract claim against LC Philly or the Pennsylvania Wage Payment and Collection Law claim against both Defendants.

1

For reasons that follow, the Court will deny Defendants' Motion in its entirety.

## II. BACKGROUND

On November 15, 2008, Defendant Holohan made a written offer to Plaintiff to "partner with me to open and manage multiple Little Ceasars[2] [sic] franchise stores in the Philadelphia metropolitan area."[3] (Id. ¶ 9.) At that time, Plaintiff was residing and working in Michigan. (Id. ¶ 8.) On December 30, 2008, Plaintiff accepted the offer and signed the contract. (Doc. No. 1 ¶ 12.) Plaintiff then underwent Little Caesars Enterprises management training in Michigan. In February 2009, Plaintiff moved to Phoenixville, Pennsylvania, and began to fulfill his obligations under the contract. (Id. ¶¶ 13-15.) In October 2009, Plaintiff informed Holohan that he would be attending a funeral and would be away from the restaurant for several days. (Id. ¶¶ 16-17.) When Plaintiff returned, Holohan terminated Plaintiff's employment. (Id. ¶ 20.) In response to his termination, Plaintiff filed the instant Complaint. As noted above, Defendants have moved for a partial dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## III. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been

---

[2] "Little Caesars" is a national pizza franchise.

[3] Defendants dispute whether Holohan as an individual was a party to the contract. Holohan did sign the contract. Plaintiff alleges that "[a]t all times relevant, [Holohan] was acting on the behalf of himself and on the behalf of defendant LC Philly." (Id. ¶ 7). According to Defendants, "Holohan is not a party to the alleged contract" and the contract provides for a "relationship between Plaintiff and the company, LC Philly, Inc., not Holohan." (Doc. No. 2 at 3, Doc. No. 8 at 2). Moreover, Defendants will apparently contest at some point whether the agreement was a contract at all, because they refer to it as an "alleged" contract in their pleadings. Because Defendants have not raised at this time the issue of whether the contract is valid, for purposes of this Opinion the Court will assume the contract is valid and will refer to the agreement as the "contract."

the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

"First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Santiago v. Warminster Twp., 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50). A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. DISCUSSION

A. <u>Defendants' Motion To Dismiss Breach Of Contract Claim Against Holohan</u>

Defendants move to dismiss the breach of contract claim against Holohan because they allege that he is not a party to the contract and "no person can be sued for breach of contract unless he is a party to the contract." <u>Donahue v. Custom Mgmt. Corp.</u>, 634 F. Supp 1190, 1200 (W.D. Pa. 1986). Therefore, according to Defendant, Plaintiff has failed to plead a claim for breach of contract against Holohan. Because the Court finds that Plaintiff has plausibly pled that Holohan is a party to the contract, Defendants' Motion to Dismiss this claim will be denied.

This case is before the Court based on diversity of citizenship jurisdiction and the claims are therefore governed by Pennsylvania law. Under Pennsylvania law, the elements of a breach of contract claim include: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. <u>Gorski v. Smith</u>, 812 A.2d 683, 692 (Pa. Super. Ct. 2002) (citing <u>Corestates Bank v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Defendants do not allege that Plaintiff has failed to plead the elements of a breach of contract. In fact, Defendants have not moved to dismiss the breach of contract claim against LC Philly, which is based on the same facts. Defendants only claim that Holohan is not a party to the contract and therefore the claim against him for its breach cannot stand.

The Court must determine whether the facts as pled, plausibly give rise to an entitlement for relief – that is, whether it is plausible, based on the facts alleged in the Complaint, that Holohan is a party to the contract. Construing the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, the Complaint does contain sufficient facts to plausibly establish that Holohan is a party to the

contract.

The contract is drafted in the form of an email to Plaintiff from Holohan. The email was apparently printed out and signed by Holohan.[4] (See Doc. No. 1, Exhibit ("Ex.") A.) Under Holohan's signature, his name is printed without any reference to his position in LC Philly or even to LC Philly at all. Thus, there is no indication that Holohan signed the contract only in his capacity as a representative for LC Philly. In fact, the contract is replete with language that refers to Holohan personally. The contract refers to an "opportunity to partner with *me*," states that "*I* look forward to working with you," and provides "You and *I* will draft the specific details of the manager position," and "It is *my* intention to open a new store every six months." (Id.) (emphasis added). These facts plausibly support Plaintiff's argument that Holohan is a party to the contract in his individual capacity. Defendants' Motion to Dismiss the breach of contract claim against Holohan will be denied.

> B. Defendants' Motion To Dismiss Fraudulent
> And Negligent Misrepresentation Claims

Next, Defendants move to dismiss Plaintiff's claims for fraudulent and negligent misrepresentation, arguing that both claims are barred by the gist of the action doctrine and/or the economic loss doctrine. (Doc. No. 2 at 4, 6). Plaintiff alleges that he has sufficiently pled both causes of action and that neither claim is barred by either doctrine. The Court agrees. Plaintiff has met the pleading requirement established by Iqbal and its progeny as well as the heightened

---

[4] The contract is attached to the Complaint as Exhibit A. The Court may consider the contract in its entirety in deciding the Motion to Dismiss. See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

pleading requirement for claims of fraud established by Federal Rule of Civil Procedure 9(b). Moreover, neither claim is barred by either the gist of the action or the economic loss doctrine.

The gist of the action doctrine and the economic loss doctrine are closely related and at times are used interchangeably. See Air Prods & Chem., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 340 (E.D. Pa. 2002) (finding that the economic loss doctrine serves the same underlying purpose as the gist of the action doctrine); Pediatrix Screening, Inc. v. Telechem International, Inc., 602 F.3d 541, 544 at n.3 (3d Cir. 2010) (noting that the parties used gist of the action and economic loss doctrines interchangeably). The doctrines are distinct enough, however, to warrant a discussion on the applicability of each doctrine in this case.

    1.    *The gist of the action doctrine does not bar the fraudulent or negligent misrepresentation claims*

The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine. The Supreme Court, however, has "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." Telechem International, Inc., 602 F.3d at 548 (quoting Reardon v. Allegheny Coll., 926 A.2d 477, 486 (Pa. Super. Ct. 2007)); see also Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

The doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims" and "precludes a plaintiff from recasting ordinary breach of contract claims into tort claims." Etoll Inc., 811 A.2d at 14; Eaton Metal, 256 F. Supp. 2d at 340. In some instances, "it is possible that a breach of contract also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to the defendant must be the gist of the

action, the contract being collateral." Etoll, Inc., 811 A.2d at 14 (quoting Bash v. Bell Tel. Co. of Pa., 601 A.2d 825, 829 (Pa. Super. Ct. 1992). In this regard, courts recognize an exception to the gist of the action doctrine where claims of fraud in the inducement of the contract are alleged, as opposed to fraud in the performance of the contract.[5] See Etoll, 811 A.2d at 17-20; Integrated Waste Solutions, Inc. v. Goverdhanam, 2010 WL 4910176 (E.D. Pa 2010); Partners Coffee Co. v. Oceana Serv. & Prods., 700 F. Supp. 2d 720 (W.D. Pa. 2010); Sullivan v. Chartwell Inv. Partners, 873 A.2d 710, 719 (Pa. Super. Ct. 2005); Eaton Metal, 256 F. Supp. 2d at 341. This exception applies because fraudulent inducement tends to be "collateral to (i.e. not 'interwoven' with) the terms of the contract itself." Etoll, 811 A.2d at 17. In this case, Plaintiff has adequately pled that Defendants made a fraudulent and/or negligent misrepresentation to induce Plaintiff to enter into the contract.

Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Bouriez v. Carnegie Mellon Univ., 585 F.3d

---

[5] Under the gist of the action doctrine, courts evaluate negligent misrepresentation claims the same as they evaluate fraudulent misrepresentation claims. A properly pled negligent misrepresentation claim alleging fraud in the inducement will survive a motion to dismiss. See Sullivan v. Chartwell Inv. Partners, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (evaluating claim of negligent misrepresentation and fraudulent misrepresentation under the gist of the action doctrine and finding fraud in the inducement in both instances); see also Werwinski v. Ford Motor Co., 286 F.3d 661, 676-77 (3d Cir. 2002) (discussing the Seventh Circuit's determination that there is "no basis for treating an intentional misrepresentation claim differently from a negligent misrepresentation claim").

765, 771 (3d Cir. 2009) (citing <u>Overall v. Univ. of Pa.</u>, 412 F.3d 492, 498 (3d Cir. 2005). A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Third Circuit has held that to satisfy Rule 9(b), a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" <u>Dimare v. Metlife Insurance Co.</u>, 369 Fed. App'x 324, at *329 (3d Cir. 2010) (quoting <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original). "This requires a plaintiff to either plead the date, time, and place of the alleged fraud, or inject precision into the allegations by some alternative means." <u>Dimare</u>, 369 Fed. App'x at *329.

In the Complaint Plaintiff alleges that "[o]n or about November 15, 2008, Holohan presented plaintiff with a contract to "partner with me to open and manage multiple Little Caesars franchise stores in the Philadelphia metropolitan area." (Doc. No. 1 ¶ 8.) Further, Plaintiff alleges that "Defendants knew that defendant Holohan was not offering a true partnership to plaintiff, but rather, intentionally presented the contract as a partnership to entice plaintiff to accept the contract and set up the restaurant business for [Holohan] in Pennsylvania." (<u>Id.</u> ¶ 29.) Plaintiff alleges that he was induced to enter into the contract by justifiably relying upon the misrepresentation, which was material to the transaction. As a result, he was injured because he uprooted his life, moved to Pennsylvania, and was shortly thereafter fired. (<u>Id.</u> ¶¶ 14, 20, 30, 32.)

In this factual recitation, Plaintiff has pled the date of the alleged fraud, November 15, 2008, and the "place" of the alleged fraud in the form of an email, which is attached to the Complaint as Ex. A. These facts are specific enough to put the Defendants on notice of the

8

precise misconduct with which they are charged and sufficient to comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). See Dimare, 369 Fed. App'x, at *329.

The fraudulent misrepresentation claim arises from actions that occurred prior to the signing of the contract and constitutes a claim of fraud in the inducement. The Complaint contains an allegation that Defendants made a material representation to induce Plaintiff to enter into the contract approximately one month before the contract was signed. (See Doc. No. 1, Ex. A.) The "gist of the action" here sounds in fraud, not in the performance of the contract, and is collateral to the contract itself.[6] See Etoll, 811 A.2d at 17-20. Accordingly, the fraudulent misrepresentation claim has been pled with sufficient particularity and will not be dismissed under the gist of the action doctrine.

The gist of the action doctrine also does not bar the negligent misrepresentation claim. Under Pennsylvania law, a negligent misrepresentation claim has four elements: "1) a misrepresentation of a material fact; 2) made under circumstances in which the misrepresenter ought to have known its falsity; 3) with an intent to induce another to act on it; and 4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Smith v. Lincoln Ben. Life Co., 395 Fed. Appx. 821, 824 (3d Cir. 2010) (citing Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454 (2005)). The same facts in the Complaint that plausibly plead a fraudulent misrepresentation claim establish a claim for negligent misrepresentation as

---

[6] Although the same words of inducement appear in the contract, (i.e. the contract contains the representation that "the following outlines the opportunity to partner with me") they appear in an introductory paragraph drafted in email form, and, moreover, they were first presented to Plaintiff as "offer details" in an email dated November 15, 2008. Only later, on December 30, 2008 did it become clear that the offer letter would transition into the contract itself. (See Doc. No. 1, Ex. A.)

well. Moreover, those same facts establish that there was fraud in the inducement which also amounts to a negligent misrepresentation claim. Therefore, the negligent misrepresentation claim is not barred by the gist of the action doctrine. Consequently, the Court will not dismiss the negligent misrepresentation claim under the gist of the action doctrine.

> 2. *The economic loss doctrine does not bar the fraudulent or negligent misrepresentation claims*

As noted, the economic loss doctrine is closely related to the gist of the action doctrine in that it similarly seeks to preserve the separation between the law of contract and the law of tort. Eaton Metal, 256 F. Supp. 2d at 336. The purpose of the economic loss doctrine is "to prevent claims based in tort that only allege economic losses in proceeding, in part because those losses can be compensated through contract remedies." Ferki v. Wells Fargo Bank, 2010 WL 5174406 (E.D. Pa. 2010). The economic loss doctrine prohibits "plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract," and provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damages." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995); Sovereign Bank v. BJ's Wholesale Club, 533 F.3d 162 (3d Cir. 2008) (citing Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 306 (Pa. Super. Ct. 2003)).

The Third Circuit has recognized an exception to the economic loss doctrine that is similar to the exception to the gist of the action doctrine.[7] When fraud claims arise independent

---

[7] In fact, the Third Circuit has recognized two exceptions to the economic loss doctrine. The second exception, known as the "Bilt-Rite" exception, applies to a narrow class of negligent misrepresentation cases "where information is negligently supplied by one in the business of supplying information, . . . and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of the information." Bilt-Rite Contractors, Inc. v. The

of the underlying contract, as in case of fraudulent inducement, the economic loss doctrine does not apply.[8] See Werwinski v. Ford Motor Co., 286 F.3d 661, 676-67 (3d Cir. 2002). In Werwinski, the Third Circuit recognized that there is no basis for treating intentional misrepresentation claims differently from claims of negligent misrepresentation, despite the connotation of intent effused by the term 'fraud' and lacking from the word "negligent." Therefore, both fraudulent misrepresentation and negligent misrepresentation claims can be analyzed similarly under the economic loss doctrine.

Since the fraud in the inducement exception to the gist of the action doctrine, *supra*, is equally applicable to the economic loss doctrine, the outcome is the same. As the Court has already stated, Plaintiff has adequately pled the elements of fraudulent misrepresentation and negligent misrepresentation. Moreover, because Plaintiff has pled facts sufficient to establish that both torts are viable claims of fraud in the inducement of the contract, which is ancillary to any claim relating to performance of the contract, both the fraudulent and negligent misrepresentation claims are not barred by the economic loss doctrine. Therefore, the Court will deny Defendants' Motion to Dismiss both claims pursuant to the economic loss doctrine.

---

Architectural Studio, 866 A.2d 270 (Pa. 2005). Because the Bilt-Rite exception is not applicable here, it will not be discussed further.

[8] The Third Circuit has limited the fraudulent inducement exception. In Werwinski, the Third Circuit held that the fraud in the inducement exception to the economic loss doctrine does not apply where the intentional misconduct relates to the quality of the goods sold. 286 F.3d at 667. Because the instant case does not involve a contract for the sale of goods, the exclusion is not applicable here.

C. Motion to Dismiss Claim For Punitive Damages

In the Complaint, Plaintiff seeks punitive damages, among other remedies. (Doc. No. 1 at 8.) The Pennsylvania Supreme Court has explained the standard governing the award of punitive damages as follows:

> The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (internal citations omitted).[9] Evidence of evil motive is not a prerequisite for an award of punitive damages, but rather, such damages may be awarded when an act is committed with either reckless indifference to the rights of others, or bad motive. See Dean Witter Reynolds, Inc. v. Genteel, 499 A.2d 637, 633 (Pa. Super. Ct. 1984); Delahanty, 464 A.2d at 1263 (citing Bacicia v. Board of Ed. of Sch. Dist. Of Erie, 451 F. Supp 882 (W.D. Pa. 1978)).

Here, drawing all reasonable inferences in favor of Plaintiff, he has adequately pled at this stage a claim for punitive damages on his claims of fraudulent misrepresentation and negligent misrepresentation.[10] The same facts that plausibly allege that Plaintiff was induced to sign the contract based upon a material misrepresentation, establish the recklessness required for a claim

---

[9] This standard is derived from the Restatement of Torts § 908 and the related comments, which Pennsylvania has adopted. See Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983).

[10] A claim for negligent misrepresentation can support a claim for punitive damages. See Browne v. Maxfield, 663 F. Supp 1193, 1205-05 (E.D. Pa. 1987) (finding insufficient evidence to support a claim of fraudulent misrepresentation, but finding sufficient evidence to support a claim for punitive damages on the remaining negligent misrepresentation claim).

of punitive damages. Accordingly, at this time, the Court will not dismiss the claim for punitive damages and Defendants' Motion will be denied.

## V.　　CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. 2).

An appropriate Order follows.